MELVIN B. PARKER v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 11 October, 1950.)

**Railroads § 4—**

> Where the evidence discloses that plaintiff was entirely familiar with the railroad crossing in question, that he stopped and looked when within eight or ten feet of the nearest rail where his view of the approaching train was obstructed by a bank, and then drove upon the crossing without again looking in that direction, although he could have stopped in safety beyond the bank where his view of the approaching train was unobstructed for a distance of one-half to two miles, *is held* to disclose contributory negligence barring recovery as a matter of law.

APPEAL by defendant from *Morris, J.,* June Term, 1950, WAYNE. Reversed.

Civil action to recover compensation for personal injuries and property damage resulting from a truck-train collision.

The defendant's track extends from Dudley to Mount Olive in a north-south direction and the road or pathway on which plaintiff was traveling extends in an east-west direction. Plaintiff's land, which lies on both sides of the railroad, slopes to the east. The railroad track is built along this slope, creating a bank on the east beyond the ditch. This "bank" is approximately level with the adjoining land to the east but is several feet above the railroad tracks. The top portion of a train may be seen as it approaches from the north.

The road is not a public road. It is in the nature of a neighborhood road across plaintiff's land from one highway to another. The public does not maintain it, and it is not on the highway map. "I maintain it just as small as I can"—"two ruts."

Plaintiff's testimony tends to show that along the right of way to the north there are plum bushes and other undergrowth and weeds and dog fennels which tend to obstruct the view to the north, from which direction the train approached, up until a traveler gets beyond the "bank" or side of the cut. The ridge of the bank is about 15 feet from the rail.

On the morning of 28 May 1948, plaintiff approached the crossing on his truck, going west. When the front of his truck was within 8 or 10 feet of the east rail, he stopped, looked to the north and then to the south. He neither saw nor heard an approaching train. He then put his car in low gear and proceeded. The front of the truck collided with the front side of the pilot or engine, resulting in injury to plaintiff and damage to the truck.

After looking to the north when he stopped, plaintiff did not again look in that direction. At that time he could see 75 or 80 yards up the track to the north but he did not actually see the train until it was within 25 or 30 feet of him. The train was traveling at about 50 miles per hour.

This is the substance of plaintiff's testimony which constitutes the evidence most favorable to him. His other testimony and the photographs present a less favorable picture for him, and defendant's testimony tends to show that he did not stop before entering upon the track and did not heed defendant's timely signals.

There was a verdict for the plaintiff. From judgment on the verdict, defendant appealed.

*Dees & Dees for plaintiff appellee.*
*Bland & Bland and W. B. R. Guion for defendant appellant.*

BARNHILL, J. Plaintiff was thoroughly familiar with the crossing at which the accident occurred. The road was a pathway across his farm which extended across the railroad tracks to the west. He used the crossing frequently in going to and from town and from one part of his farm to another. On the day of the accident he was on his way to that part of his farm which lies to the west of the railroad. He stopped at a point near the track where he could see to the north for a distance of 75 or 80 yards, yet he did not see the train until it was within 25 or 30 feet of him. When he stopped, he first looked to the north and then to the south and then proceeded toward the track without again looking north. Had he proceeded to a point just beyond the bank as he could have done in safety, he would have had an unobstructed vision to the north for a distance variously estimated from one-half to two miles. In this connection his wife testified: "I go across the crossing where this accident occurred. I passed there that very day . . . If I get right down near the track I can look down and see but I couldn't see if I were with the embankment back there. I have to be almost on the track to see down it because I have to stop there every time to get across."

Thus, the plaintiff having looked one time, looked no more. He could have stopped in safety at a point which would have afforded him a clear vision. Though he could have seen the train 80 yards or 240 feet away, he did not see it until it was right on him—25 or 30 feet away. While he was traversing 8 or 10 feet, the train, traveling at about 50 miles per hour, went a distance of 240 feet—or so he testified.

On these facts decision is controlled by the line of cases represented by *Harrison v. R. R.,* 194 N.C. 656, 140 S.E. 598; *Godwin v. R. R.,* 220 N.C. 281, 17 S.E. 2d 137; *Miller v. R. R.,* 220 N.C. 562, 18 S.E. 2d 232; *Eller v. R. R.,* 200 N.C. 527, 157 S.E. 800; and *McCrimmon v. Powell,* 221 N.C. 216, 19 S.E. 2d 880. Plaintiff knew he was approaching a zone of danger. He had timely opportunity to see the approaching train and avoid the collision. His failure to do so constitutes contributory negligence as a matter of law.

It does not suffice to say that plaintiff stopped, looked, and listened. His looking and listening must be timely, *McCrimmon v. Powell, supra,* so that his precaution will be effective. *Godwin v. R. R., supra.* It was his duty to "look attentively, up and down the track," in time to save himself, if opportunity to do so was available to him. *Harrison v. R. R., supra; Godwin v. R. R., supra.* Here the conditions were such that by diligent use of his senses he could have avoided the collision. His failure to do so bars his right to recover. *Godwin v. R. R., supra.*

"The courts give slight heed to the testimony of a witness who is willing to say that he cannot see or hear when there is nothing to keep him from seeing and hearing." "To say that he did not see or hear it is

a challenge to universal experience." *Adams, J.,* in *Tart v. R. R.,* 202 N.C. 52, 161 S.E. 720.

Since we conclude that plaintiff was guilty of contributory negligence as a matter of law, we need not discuss or decide just what duties defendant owed plaintiff at this nonpublic crossing. Whether it was held to the same degree of care imposed upon it in respect to persons using a public highway we need not say.

The court erred in denying defendant's motion to dismiss as in case of nonsuit. Hence the judgment below must be

Reversed.