### C. E. BARBER v. SOUTHERN RAILWAY COMPANY.

(Filed 11 May, 1927.)

1. **Negligence—Railroads—Crossing—Watchmen—Warnings — Contributory Negligence—Evidence—Questions for Jury—Nonsuit.**

   Where a railroad company has for some time kept a watchman to warn travelers of danger from crossing its tracks at a public street or highway, and this is known to the plaintiff, who was injured by a rapidly moving train while attempting to cross in an automobile on a dark, rainy day with the isinglass curtains up, the absence of the watchman and the consequent failure to give warning is an implied invitation to the traveler to cross, which may be considered by the jury upon the question of whether the person thus crossing the track had exercised ordinary care under the circumstances, or had by failing to use such care contributed to his own injury, and the defendant's motion as of nonsuit upon the evidence is properly denied. C. S., 567.

**2. Same—Stopping Before Crossing Railroad Track.**

　　Whether one driving an automobile across a railroad track at a public crossing negligently contributes to his own injury by failing to come to a complete stop before attempting to do so, depends upon whether under the circumstances he should have stopped in the exercise of ordinary care for his own safety.

**3. Appeal and Error—Instructions—Record—Presumptions.**

　　Where the charge of the court to the jury does not appear in the record of the case on appeal, the presumption is in favor of its correctness on every phase of the law arising under the evidence.

**4. Negligence—Evidence—Attention to Injured Persons.**

　　Evidence that the defendant in an action to recover damages for an alleged negligent injury to the' plaintiff, carried him to a hospital and furnished him with medical care, is inadmissible upon the issue of negligence.

**5. Appeal and Error—Objections and Exceptions—Evidence—Broadside Exceptions—Instructions—Issues—Negligence.**

　　Where evidence is competent to be considered by the jury upon one of the issues properly submitted, and not upon another, the appellant must aptly request the trial judge to confine it to the proper issue in order to avail himself of his exception on appeal.

APPEAL by defendant from *Oglesby, J.,* and a jury, at November Term, 1926, of ROCKINGHAM. .No error.

This is an action for actionable negligence, brought by plaintiff against defendant. The defendant plead contributory negligence. The issues were the usual ones in such cases: (1) negligence, (2) contributory negligence, (3) damages, and were answered in favor of plaintiff, and damages awarded. The material facts will be considered in the opinion.

*Glidewell, Dunn & Gwyn for plaintiff.*
*Ivie, Trotter & Johnston for defendant.*

CLARKSON, J. The injury to plaintiff occurred where the north and southbound main lines and sidetrack of the defendant Southern Railway Company crossed Settle Street in Reidsville, N. C. East Market Street runs parallel with the railroad, and on the east side of the tracks. A watchman's shanty is at the mouth of Settle Street on Market Street. Plaintiff, on the evening, between 2 and 3 o'clock, of 16 November, 1920, was driving a Buick touring car with the curtains on containing isinglass windows. Beside him was his son, and in the rear seat was another boy, Scott Fillman. It was foggy, pouring down rain, cold, and rain coming from the east. The passenger train was some 35 minutes late, running about 50 miles an hour at full speed when plaintiff was

struck. Plaintiff, coming down East Market Street, near Settle Street crossing, slowed up his car, waiting for a long freight train, about 70 cars, to pass, going south, which was making the usual roaring noise, and for everything to get clear. Before he turned from East Market Street into Settle Street, he looked, glanced back, and could see some 75 yards. As he started to turn he looked for the watchman—could see through the glass, the whole street was clear. Leaned over and looked south down railroad track to the left—the track was clear, could see down some 60 yards. When he proceeded to cross Settle Street he was running about 5 miles an hour. Just as he got up on the first track, he heard a danger signal of several sharp blasts of the whistle of the train coming from the south, and about the time he saw the watchman coming half-running from the opposite side of Settle Street, that he had started to cross, hollowing "Stop." He stopped as quick as he could, reversed his car, and backed back about four feet, and while moving back the passenger train struck the front end of the car. The car was knocked about 60 feet. The Fillman boy was killed, plaintiff was seriously injured, and the car torn to pieces. The watchman's shanty was knocked off its foundation by the automobile, which was knocked about 60 feet.

Plaintiff testified that *on a clear day* a man on East Market Street could see the train a quarter of a mile. No obstruction in the way to cut off view of train coming from the south. It was in evidence that the defendant kept a watchman at Settle Street crossing, which was known to plaintiff.

The defendant introduced no evidence; (1) made a motion, at the close of plaintiff's testimony, for judgment as in case of nonsuit, C. S., 567; (2) requested the court below to charge the jury, "If you believe the evidence, you will answer the second issue 'Yes' " (contributory negligence issue). Both requests refused, and exceptions taken by defendants and errors assigned.

The defendant also excepted and assigned error to the charge of the court below as follows: "Our law has also said that where a railroad company maintains a flagman at a railroad crossing, whether voluntarily or by law or custom, the public generally has a right to presume that this safeguard will be reasonably maintained and attended to, and in the absence of knowledge to the contrary, the fact that the flagman is absent from his post, or, if present, is not giving the warning of danger, is an assurance of safety and an ample invitation to cross, upon which a traveler familiar with the crossing may rely and act, within reasonable limitations, on the presumption that it is safe for him to go on the crossing."

On motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

We think the court below correct on all three propositions. There was sufficient evidence to be submitted to the jury on the issues both of negligence and contributory negligence. As to the charge as given, Sherman & Redfield on the Law of Negligence, 2d vol. (6 ed.), p. 1158, citing a wealth of authorities, lays down the rule as follows: "Where a railroad company is under no original obligation to station a flagman at a particular crossing, yet if it has done so for a long time, travelers have a right to presume, in case of his absence, that the road is clear."

In *Shepard v. R. R.,* 166 N. C., at p. 545, the following is quoted with approval: "In 33 Cyc., at p. 1028, the author, speaking to this question, says: 'Where a railroad company maintains a flagman, gates, or other signals of warning at a railroad crossing, whether voluntarily or by law or custom, the public generally has a right to presume that these safeguards will be reasonably maintained and attended, and in the absence of knowledge to the contrary, the fact that the gates are open, or automatic bells not ringing, or that the flagman is absent from his post, or, if present, is not giving a warning of danger, is an assurance of safety and an implied invitation to cross upon which a traveler familiar with the crossing may rely and act, within reasonable limits, on the presumption that it is safe for him to go on the crossing. The extent to which a traveler may rely on such assurance is a question of fact, and while ordinarily the same degree of care and vigilance is not required of a traveler under such circumstances as otherwise, he has no right to rely exclusively upon such circumstances, nor will such presumption or assurance excuse the traveler from using every reasonable precaution that an ordinarily prudent man would use under like circumstances. Such facts as the absence or presence of a flagman, or that the gates are open, or that the automatic bells are ringing or not ringing, are merely facts to be considered in determining whether the traveler exercised the degree of care required in attempting to cross.' "

The charge of the court below not being in the record, the presumption of law is that the court below charged the rule of the prudent man under the facts and circumstances of the case.

We think the refusal of the court below to nonsuit plaintiff and give defendant's prayer for instruction, and the charge as given, fully supported by the authorities in this jurisdiction. In *Shepard v. R. R.,* *supra,* at p. 545, it is said: "It is also established by the weight of authority that it is not always imperative on a traveler to come to a complete stop before entering on a railroad crossing; but 'whether he

must stop, in addition to looking and listening, depends upon the facts and circumstances to each particular case, and so is usually a question for the jury.' *Alexander v. R. R.*, 112 N. C., 720; *Judson v. R. R.*, 158 N. Y., 597; *Malott v. Hawkins,* 159 Ind., pp. 127-134; 3 Elliott on Railroads (2 ed.), sec. 1095, note 147; 33 Cyc., pp. 1010, 1011-1020." *Perry v. R. R.*, 180 N. C., 290; *Parker v. R. R.*, 181 N. C., 95; *Jackson v. R. R., ibid.,* p. 153; *Williams v. R. R.,* 182 N. C., at p. 274; *Rigsbee v. R. R.*, 190 N. C., p. 231.

It was in evidence that immediately after plaintiff's injury he was put in the baggage car of the train by defendant company and carried to the general hospital at Danville, Va. Dr. Miller treated him there. Plaintiff testified:

"Q. Who employed Dr. Miller? Who sent you to Dr. Miller? Objection by defendant; overruled; exception. Witness allowed to answer as follows: A. The railway company. Defendant moves that the answer be stricken out; overruled; exception." Assignments of error were duly made.

The above exceptions present a serious legal question, and we would hold it error but for the fact that the plaintiff alleged in the complaint that he was permanently injured, which was denied by defendant in its answer. The question and answer were competent on the question of injury.

The defendant, as the record shows, entered a general exception to the admission of this testimony on trial, and did not ask that it be restricted for the purpose for which it was competent, and requested no special instruction in regard to it. Its admission, therefore, is not assignable error. Latter part of Rule 21 of Practice in the Supreme Court, 192 N. C., at p. 850, is as follows: "Nor will it be ground of exception that evidence competent for some purposes, but not for all, is admitted generally, unless the appellant asks, at the time of admission, that its purpose shall be restricted." *Hill v. Bean,* 150 N. C., 436; *Beck v. Tanning Co.,* 179 N. C., 126.

"In an action by a servant for personal injury, it was error to permit evidence that the defendant had furnished plaintiff a nurse, as tending to show a recognition of liability." *Sias v. Consolidated Lighting Co.* (Vt.), 50 At. Rep., 554. "For one, after driving over a street sweeper, to come back and say that if he was hurt, he would be glad to do anything he could for him, and, after his wound was dressed, to go to his house and give him ten dollars and ask if he could do anything more for him, is not an admission of negligence." *Smith v. Bailey,* 43 N. Y. Supp., p. 856; *Grogan v. Dooley,* 211 N. Y. Court of Appeals, p. 30; *Wilson v. Daniels* (Mass.), 145 N. E., p. 469.

If defendant had asked that the testimony be restricted for the purpose of showing injury, which defendant denied, or had asked for instruction to that effect, and this had been refused by the court below, we would have held it error and granted a new trial. The defendant, not knowing whether it was liable or not, had the humanity to take plaintiff, who was struck by its engine, to a hospital in Danville and employed Dr. Miller to attend him. It was an act of mercy which no court should hold in any respect was an implied admission or circumstance tending to admit liability. If a court should so hold, it would tend to stop, instead of encourage, one injuring another from giving aid to the sufferer. It would be a brutal holding, contrary to all sense of justice and humanity. If proper request had been made by defendant for the evidence to be restricted as required by the rule, we are satisfied that the careful and able judge who tried the case in the court below would have complied with the rule.

In the other assignments of error, we can see no new or novel proposition of law, nor do we think that they are material.

For the reasons given, we can find

No error.