WILLIAM V. JOHNSON v. SOUTHERN RAILWAY COMPANY AND
ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 27 September, 1961.)

**1. Railroads § 3—**

Where one railroad company is permitted to run its train over the
tracks of another, both may be held liable for negligent injury to a motor-
ist in a crossing accident, notwithstanding that only one of them is
guilty of negligence causing the accident.

**2. Railroads § 5—**

A railroad company and a motorist are under mutual and reciprocal
duty of exercising due care to avoid a crossing accident; the engineer of
the train is under duty to give the customary warning of the train's ap-
proach to the crossing and to exercise reasonable vigilance, the motorist
is under duty to look and listen in both directions for an approaching
train if not prevented from doing so by the fault of the railroad com-
pany, and to do so at a point where lookout will be effective.

**3. Same—**

The failure of warning signals of the approach of a train to a railroad
crossing does not justify a motorist in driving blindly onto the track in
reliance on the absence of signals, but a motorist remains under duty
to look and listen in both directions for an approaching train.

**4. Same—**

Momentary failure of an automatic crossing signal is not evidence
of any negligence of the railroad company, res ipsa loquitur having no
application, but such failure may be properly considered in measuring the
care exercised by the motorist, since a motorist has a right to place some
reliance upon the signal, even though he may not rely blindly thereon,
and therefore the absence of such signal is relevant on the question of
contributory negligence.

**5. Same—Evidence held not to show contributory negligence as a matter
of law on part of motorist injured in crossing accident.**

Evidence tending to show that the crossing in question was obstructed
by a box car standing some 50 feet from the crossing on a spur track
and another box car standing some 250 feet therefrom, that plaintiff
stopped his vehicle some 30 feet before reaching the crossing, from which
point plaintiff could see about 75 feet northward along the track to the
south end of the nearest box car and some 300 feet northwardly between
the box cars, that plaintiff then moved slowly forward, continuing a
lookout by glancing along the track, the view between the box cars
lessening as he approached the track, that the automatic signal device
at the crossing was not working, and that the train, approaching from
the north, gave no warning by bell or whistle, does not disclose con-
tributory negligence as a matter of law on the part of the motorist not-
withstanding his testimony that he did not see or hear the train until
it struck his vehicle.

APPEAL by plaintiff from *Parker, J.,* March 1961 Term of GATES.

This action was instituted 1 December 1959 to recover for personal injuries and property damage suffered by plaintiff when a pickup truck driven by him was struck by a freight train at a railroad crossing in Roduco, N. C., on 24 January 1959.

At the close of plaintiff's evidence the court allowed the motions of defendants for nonsuit and entered judgment dismissing the action.

Plaintiff appealed and assigned errors.

*Phil P. Godwin, Thos. L. Woodard and John H. Hall for plaintiff, appellant.*

*Joyner, Howison & Mitchell for defendant Southern Railway Company, appellee.*

*Godwin & Godwin and Rodman & Rodman for defendant Atlantic Coast Line Railroad Company, appellee.*

MOORE, J.  It is admitted in the pleadings that the railroad is owned by the Atlantic Coast Line Railroad Company (hereinafter referred to as A.C.L.), that the Southern Railway Company (hereinafter called "Southern") by agreement with A.C.L. operates freight trains on and over this railroad, and that the freight train involved in the alleged collision was owned and operated by Southern.

"It is a well-established principle of law that a railroad company which admits another railroad company to the joint common use of its tracks is liable for the negligent acts of such company in the enjoyment of such use, although it was guilty of no negligence or breach of duty on its own part, and such liability is not affected by the fact that the company using the tracks is also liable. . . ." 74 C.J.S., Railroads, s. 364a, p. 895.

Appellant alleged and offered proof of negligence on the part of defendants in the following respects: (1) Southern's train which struck plaintiff's vehicle at the crossing did not give warning of its approach either by ringing bell, sounding gong, or blowing whistle; (2) the automatic signal light maintained by A.C.L. at the crossing failed to work and give warning of an approaching train; and (3) the train approached from the north, and in that direction the view was obstructed. Defendants alleged that plaintiff was contributorily negligent in that he failed to keep a proper lookout and drove upon the crossing without taking reasonable precautions to discover the peril and avoid collision.

"When approaching a public crossing the employees in charge of a train and a traveler upon the highway are charged with the mutual and reciprocal duty of exercising due care to avoid inflicting or receiving injury. . . ." *Moore v. R. R.,* 201 N.C. 26, 29, 158 S.E. 556.

The train has the right of way, but the law imposes upon the engineer the duty to give the usual and customary warning of the train's approach and to exercise vigilance in approaching crossings in order to avoid injury. A traveler on the highway has the right to expect timely warning. But the failure to give such warning does not justify the traveler in relying upon such failure or in assuming that no train is approaching. Before attempting to go upon or cross the track, a traveler must look and listen in both directions for approaching trains, if not prevented from doing so by the fault of the railroad company; and this should be done before he has taken a position exposing him to peril, and at a point where lookout will be effective. *Parker v. R. R.*, 232 N.C. 472, 61 S.E. 2d 370; *Godwin v. R.R.*, 220 N.C. 281, 17 S.E. 2d 137; *Harrison v. R. R.*, 194 N.C. 656, 140 S.E. 598; *Johnson v. R.R.*, 163 N.C. 431, 79 S.E. 690; *Coleman v. Railroad Company*, 153 N.C. 322, 69 S.E. 251; *Cooper v. Railroad*, 140 N.C. 209, 52 S.E. 932; *Norton v. R. R.*, 122 N.C. 910, 29 S.E. 886.

"While it should not be understood that the failure of a signaling device maintained at a crossing to work at any particular time necessarily constitutes negligence on the railroad's part under all circumstances, . . . such a failure has been very generally held or regarded to be a breach of duty toward a person relying upon such signal, and consequently at least evidence of negligence, which may be taken into consideration along with other alleged acts of negligence, particularly where the device has been out of repair for a considerable period of time and the railroad has had notice of its defective condition." Anno: 99 A.L.R., Railroad Crossing — Signal Device, s. II, pp. 729, 730.

The mere momentary failure of an automatic signaling device to operate upon the occasion of an accident is not evidence of negligence on the part of the railroad company. *Res ipsa loquitur* has no application in such circumstances. *Vaca v. Southern Pac. Co.*, 267 P. 346 (Cal. 1928). But it is proper to consider such failure in measuring the care exercised by the traveler in negotiating the crossing, and it is therefore relevant on the question of contributory negligence. *Southern Pac. Co. v. Kauffman*, 50 F. 2d 159 (9th C. 1931). A traveler on a highway has the right to place some reliance upon an automatic crossing signal, especially if his view is obstructed. *Southern Ry. Co. v. Whetzel*, 167 S.E. 427 (Va. 1933). But the fact that an automatic warning signal is not working does not relieve the traveler of the duty to look and listen for approaching trains when from a safe position such looking and listening will suffice to warn him of danger. *Price v. Chicago & E. I. Ry. Co.*, 270 Ill. App. 111 (1933); *Calloway v. Pennsylvania R. Co.*, 62 F. 2d 27 (4th C. 1932); *Kindig v. Atchison, T. & S. F. Ry. Co.*, 1 P. 2d 75 (Kan. 1931). Where there are obstructions to

the view and the traveler is exposed to sudden peril, without fault on his part, and must make a quick decision, contributory negligence is for the jury. *Southern Ry. Co. v. Davis*, 147 S.E. 228 (Va. 1929).

In the instant case the evidence, when taken in the light most favorable to plaintiff, is sufficient *prima facie* to establish that defendants were negligent and that such negligence was a proximate cause of the collision. Decision turns upon the question as to whether or not plaintiff was contributorily negligent as a matter of law.

The railroad runs north and south. U. S. Highway 158 runs east and west and crosses the railroad at grade. 158 is a two-lane highway. Plaintiff was headed west. He stopped the pick-up about 30 feet before reaching the railroad track and in his proper lane of travel. He looked in both directions and listened. The railroad station is about 300 feet north of the crossing and about 12 feet east of the main track. To the north of the station is a pile of sawdust or chips. A spur track runs between the station and the main track, parallels the latter, and ends near the highway but does not cross it. The main and spur tracks are about 6 feet apart. There was a housed box car, about 40 feet long, standing on the spur track about 50 feet north of the highway. There was another box car on the spur track alongside the station. The railroad is straight and level for two miles north of the crossing. At the crossing A.C.L. had installed automatic signal lights about 10 feet from and on both sides of the track, and when in operation the lights blink alternately and give off a bright red light. These signal devices bear the legend: "Stop on red signal." Above the lights are cross-arm signs marked "Railroad Crossing." Plaintiff did not see or hear a train. The weather was clear and the sun shining. It was about 10:20 A.M. Plaintiff could see about 75 feet northwardly along the track to the south end of the nearer box car. Plaintiff moved forward in low gear. He did not see or hear the train until it struck his vehicle. He heard no whistle, bell or gong. The automatic signal light was not blinking.

Plaintiff makes the following explanations: "There was nothing on the spur track between the two box cars. . . . My view to the north did increase some. I continued to look as I came up here." As I "went up to the railroad track, during that 30 feet, . . . I glanced, you know how would turn your head and glance, but I was mainly looking at the road then. When I pulled off I looked again to be sure and then I centered my attention primarily on the highway. . . . I did not rely on the lights alone, I listened and looked. During the last thirty feet when I was approaching the crossing I did not assume that there was no train merely from the fact I did not see any light blinking. I looked carefully in both directions and listened carefully."

It does not suffice to say that the traveler on the highway stopped, looked and listened; the looking and listening must be timely, so that the precaution may be effective. It is his duty to look attentively up and down the track in time to save himself, if the opportunity to do so is available, but he is not required to leave his vehicle and go upon the track on foot to make his observations. Yet, it is his duty to take such precautions as an ordinarily prudent man would take under the same or similar circumstances. *Parker v. R. R., supra; McCrimmon v. Powell,* 221 N.C. 216, 19 S.E. 2d 880; *Miller v. R. R.,* 220 N.C. 562, 18 S.E. 2d 232; *Godwin v. R. R., supra.* Even so, a traveler on a highway has the right to place some reliance upon an automatic crossing signal if his view is obstructed. *Southern Ry. Co. v. Whetzel, supra.* See also: *Oldham v. R. R.,* 210 N.C. 642, 188 S.E. 106; *Keller v. R. R.,* 205 N.C. 269, 171 S.E. 73; *Barber v. R. R.,* 193 N.C. 691, 138 S.E. 17; *Shepard v. R. R.,* 166 N.C. 539, 82 S.E. 872.

While plaintiff in the instant case was stopped, 30 feet from the crossing, he could see at least 300 feet northwardly along the track. The only obstruction within 300 feet was the box car near the end of the spur line. There was a substantial opening between the two box cars. Plaintiff then had a view of the track between the first box car and the crossing of about 75 feet. As he moved forward the view between the box cars decreased and at length disappeared altogether, and the view south of the first box car increased some. Had plaintiff stopped just before entering the crossing, it does not appear how far he could have seen along the track. The box car was wider than the track, and the main and spur tracks were only about 6 feet apart.

Should plaintiff, in the exercise of due care, have stopped again just before entering the crossing, and, if so, how far could he have seen along the track? Would an ordinarily prudent man have relaxed his vigilance somewhat, under the circumstances, because of the failure of the automatic signal lights to work? If plaintiff had focused his attention along the track to the north as he neared the crossing, could he have seen the approaching train in time to stop before going upon the track? These and other pertinent questions must be answered by the jury. Opposing inferences are permissible from the evidence. *Harris v. Davis,* 244 N.C. 579, 581, 94 S.E. 2d 649. Therefore, it cannot be said that plaintiff was contributorily negligent as. a matter of law.

In *Boyd v. R. R.,* 232 N.C. 171, 59 S.E. 2d 785, the circumstances were very similar to those in the case at bar. There an opposite result was reached. The distinguishing feature is that in the *Boyd* case plaintiff stopped and looked at a point 20 feet from the track where

her view was almost entirely obstructed and then went blindly forward. Plaintiff said: "We did not look but one time. . . . I just don't know why I didn't look the second time."

The judgment below is

Reversed.